(January 29, 1896.)

## NEW MEXICO ENSOR REMEDY COMPANY v. HOBSON.

[43 Pac. 573.]

Evidence—Sufficiency of, to Present Case to Jury.—Evidence examined and held to be sufficient to authorize submission to jury and that the court erred in taking case from jury.

(Syllabus by the court.)

APPEAL from District Court, Bannock County.

E. P. Blickensderfer, for Appellants.

The theory upon which the trial court refused to allow the jury to decide this case was that the evidence shows the stock of this company to have been of some value. Therefore the defendants, to avoid payment of the note on the ground of fraud, would have to show they made a proper offer to return the stock after discovery of the alleged fraud; and that the evidence fails to show such proper tender. The statement was made by Crozier to both the Hobsons that the stock he proposed to sell them was preferred stock. This was the final and decisive inducement upon which they gave him the note. This was absolutely false. This alone was sufficient to vitiate the contract as between these parties. (Pomeroy's Equity Jurisprudence, par. 800.) Crozier, Kennedy, Hayes, and the secretary, Hite, all left the country suddenly and at about the same time, and we have evidence of fraud, amounting to a conspiracy. (1 Bigelow on Fraud, 166, 167.)

Thomas F. Terrell, for Respondent.

The fact that Crozier committed a fraud on defendants is immaterial, unless plaintiff took note and mortgage with notice of such fraud, and being president of the corporation at the same time is not of itself notice to the company of such fraud, when disposing of his private stock and acting in individual capacity. (*Casco Nat. Bank of Portland v. Clark,* 139 N. Y. 307, 36 Am. St. Rep. 705, 34 N. E. 908; *Merchants' Nat. Bank of Gardner v. Clark,* 139 N. Y. 314, 36 Am. St. Rep. 710, 34 N. E. 910; *Washington Nat. Bank v. Pierce,* 6 Wash. 491, 36

Am. St. Rep. 174, 33 Pac. 972; *King v. Doane,* 139 U. S. 166,. 11 Sup. Ct. Rep. 465; *Merchants' Nat. Bank v. Lovitt,* 114 Mo. 519, 35 Am. St. Rep. 770, 21 S. W. 825.) Even if it should be conceded that Crozier acted fraudulently in the sale of stock to defendants, and succeeded in making the sale by misrepresentations relied upon by the Hobsons, it was the defendants' duty to immediately repudiate the contract and tender a return of the stock, upon the discovery of the fraud, and any unreasonable or unjustifiable delay in repudiating the contract or returning or offering to return the stock, will bar his right to make such defense. (Beach on Private Corporations, sec. 626; *Gifford v. Carvill,* 29 Cal. 589.)

HUSTON, J.—This is an appeal from a judgment of the district court for Bannock county, and from the order refusing a new trial. The facts, as they appear from the record, are substantially as follows: Some time in the year 1892, certain persons (five in number) organized, under the laws of Idaho, a corporation known as the New Mexico Ensor Remedy Company. The ostensible purpose of this company was to carry the beneficence of what is commonly known as the "jag cure" into the benighted regions of the territory of New Mexico. It appears from the record that the five persons aforesaid had purchased from Dr. Ensor, the alleged discoverer of the wonderful panacea of inebriety, his secret, prescription, dose, or whatever it may be called, and, being imbued with the spirit of altruism, they were solicitous of dispensing the blessing among the less fortunate people of New Mexico. To carry out this laudable purpose, the aforesaid corporation was formed, with a capital of $30.000. The shares were thirty thousand, at a par value of one dollar per share. The treasury of the corporation not being plethoric of wealth (that is, ready cash), it was agreed that each of the five original corporators should take one thousand two hundred shares of the capital stock, to dispose of as he should see fit, to remunerate him for his original "lay out."

The "president," and, as it would appear, the moving spirit of the enterprise, was a person ycleped "Dr." Crozier. Crozier, having acted as the physician of the defendants and having es-

tablished the confidence which usually follows that relation, to manifest his zeal for, and his interest in, the pecuniary welfare of his said patients, the defendants, proposed to improve their financial condition by allowing them to become purchasers of two hundred shares of the capital stock of said corporation. And the more completely to devest this offer of any seeming benefit to himself, and that his only motive was to benefit the defendants, he assured them that the stock he proposed to sell them was preferred stock, and would receive dividends in advance of any other stock. Induced by and replying upon, the representations of the benevolent "Dr.," the defendants were induced to purchase two hundred shares of the capital stock of the New Mexico Ensor Remedy Company, and to give in payment therefor their promissory note for the sum of $200, with interest at the rate of twelve per cent per annum, and a reasonable attorney's fee.

It is virtually conceded by respondent that "Dr." Crozier perpetrated a fraud upon the defendants, but it is claimed that such fraud does not attach to plaintiff, as the owner and holder of the note and mortgage. The evidence of W. F. Fisher, who appears to have been one of the original corporators, and is now, we infer, a sort of administrator *de bonis non* of the whilom corporation, is as follows: "This is the note sued on in the complaint, purchased from Dr. Crozier by the company. The company purchased the note from Dr. Crozier in December, 1892, before its maturity." Mr. Fisher testifies as follows: "There was a pool formed by the five original promoters, as individuals, for the purpose of selling some of our individual private stock, and it was agreed between us that the money from such sale should be divided equally among all in the pool." This note and mortgage were palpably "Dr." Croizer's contribution to the pool. At the time of the alleged sale and transfer of the note and mortgage. "Dr." Crozier was the president of the corporation, and the sale is explained by Fisher as follows: "In explanation of what took place at the time of purchase, I will say: Along in December this company wanted money to start business. We had a note of J. S. Chevigney, but could not get cash on it at the bank. This note was for

$250. It was suggested by Crozier that he would as soon have the Chevigney note as Hobson's and, as Hobson's note was secured by a mortgage, we thought it could be cashed at bank; so we traded for it." It appears that, soon after, all of the original promoters, except Fisher and Mrs. Palmer, who are residents of Bannock county,

"Folded their tents like the Arabs,
And as silently stole away."

But it is contended by respondent that defendants never proffered a return of the stock for which the note and mortgage were given. It appears by the testimony of several witnesses—two, at least, of whom are stockholders and officers of the corporation—that the stock had no value whatever. And, besides, it appears from the record that defendants had not only offered to return the two hundred shares of the stock to the company on delivery or cancellation of their note and mortgage, but had also offered to add thereto five hundred shares of said stock which the conscientious "Dr." Crozier had given them to placate them, it would seem, until he was able to "get out." We think, with the evidence set forth in the record before it, it was error for the district court to take the case from the jury. The judgment of the district court is reversed, and the cause remanded, with costs to appellants.

Morgan, C. J., and Sullivan, J., concur.